on behalf of appellant Eric Leon Christian. In this particular appeal, there's two issues at hand, the first being whether it was profit. Can I just back up a minute? Are you a CJA lawyer? Were you appointed by this? I was, Your Honor, yes. Okay. Did you fail to submit an excerpt of record in this case? I believe the excerpts of record were submitted. I think they were submitted later. It might have been in delay, but I believe that they were ultimately submitted. Okay, go ahead. In regards to the appeal, there were two particular issues. The first was whether it was proper to strike the expert testimony of Dr. Calisimo and not allow him to testify, and secondly, whether it was proper to strike the proposed jury instruction in reference to diminished capacity. The court asked us to focus particularly on two particular cases, so I'll take my argument basically towards those two cases. The first was in reference to the United States v. Bella Bohena matter in which the court wanted us to supplementally brief the issue in reference to not giving the diminished capacity argument. And in that particular case, I believe what the court was looking for us to argue about was in reference to whether or not there was enough evidence proffered at the trial in order to give the jury instruction. Now, I would submit to the court that the best evidence that would have been out there would have been Dr. Calisimo's testimony. Yeah, you might want to flip your argument because wrong is really the issue that relates to the evidentiary foundation for jury instruction. Chronologically, the way this unfolded, as I understand it, is... Okay. I can certainly focus on the Ron matter because there was the four-part test that was set forth by the court, and I believe that in that four-part test we met all four prompts, the first being that Dr. Calisimo is a qualified expert. I don't believe that from the record that there was any objection or any question that Dr. Calisimo was not a qualified expert. He had actually testified numerous times. Well, let's assume he was qualified. Correct. The court rejected the proffer that was made after the issue was raised the day before... Correct. ...and wanted to know what it was that the doctor was going to testify to, and rejected the proffer such as it was on the ground that it didn't go to the issue of intent and understanding, that what Mr. Christian had said was a threat to be taken seriously as a threat by the recipients. You are correct, Your Honor. Okay. So Ron addressed the issue in a context where he said that the court had misunderstood or misapplied the standards by rejecting the testimony in its entirety without looking at the underlying constituents of the psychological analysis. In this case, all that's in the record is that he did a competency exam, and the judge said, well, that doesn't have anything to do with the content issue that he's now being proffered for. So it wasn't his qualifications. It was just the substance of what he was being offered up as a witness. So how does ROM, in your view, help you or not in that case? I believe it does help me. The issue came up on the first day of trial. Judge Mahan was nice enough to give me the opportunity to go back and speak to Dr. Colissimo so that I could make an offer to see exactly if the testimony would be on the proper subject testimony, because it was basically Judge Mahan's feeling that it was too totally subject, the fact that he was found incompetent by a court, and the fact that we were arguing that he had diminished capacity at the time that he committed the crime. Could you explain? I mean, I think perhaps Judge Mahan's problem and my problem is that I'm having a hard time seeing exactly what a psychiatrist could say about diminished capacity in this particular context, in the sense that Mr. Christian wrote e-mails which were threatening, which must have been meant to be threatening, because why else was he writing them, and so what would the diminished capacity consist of, that he didn't understand that they would be understood as threatening when he certainly meant them to be understood as threatening? That was part of the argument, yes, that he was not able to formulate the requisite intent, because he didn't, yes. I understand you say that, but I need it sort of put into a slightly longer sentence. I don't see how it works. It works in that I spoke to Dr. Colissimo, who would have testified that he had gone, he had done an evaluation on Eric to see whether or not he was competent to testify or to stand trial. In this particular instance, I also asked him in reference to the diminished capacity. I said, the judge has a problem with you testifying because he feels, and it's two separate things, competency and diminished capacity. Would you be able to testify that the two are not mutually exclusive, that they do somewhat overlap, that there would be? Well, that doesn't give me trouble, because it seems to me that what he was saying to the doctor wasn't that the standards are the same, but that the examination was the same. So he had the data from his earlier examination, and he could testify. I understand that much, and I think that Judge Mahan misstated what was said by saying the standards are different. Well, the standards are different, but that doesn't mean the exams are different. But I still don't understand what content of a diminished capacity testimony in this context would be. And I apologize. I'm probably being a little bit long-winded in not getting specifically,  Right. if I could just put it into one or two sentences, I believe, well, I know Dr. Colissimo told me that he would have testified that as a paranoid schizophrenic, that's because Eric has been diagnosed as such, that he would not have been able to formulate the necessary intent to commit said crime. That's basically it in a nutshell. I mean, I can elaborate. He couldn't have testified to as such, because that would be the, but he could have come close under our case law. Right. Basically saying that, you know, based upon the facts and circumstances, you know, I gave him copies of the reports. He had his own reports, and he was able to assimilate all the information, and based upon that, that would have been his case. I mean, one additional problem, though, is you have now told us a lot more than you told Judge Mahan. Well. At least on the record. Yeah. I believe pretty much, I believe that I made many of these arguments. Your honors are being a lot more specific with me, and it might have been my issue and not making a better record, but bottom line is I made these particular arguments. I told him that, you know, he would have been helpful to the jury, and the jury should have heard this information, and the government would have had every opportunity to cross-examine him. In your offer of proof, though, you didn't tell the judge that the doctor would say, in looking at his mental condition, he was a paranoid schizophrenic, and that would have had an effect on his ability to form an intent. You didn't make that argument, did you? I honestly cannot remember. I might not have. I think what you told the judge was that the psychiatrist had said, I would have asked all the same questions that I asked with respect to competency. So the whole examination and the whole interchange with Christian would have been the same, and the judge was troubled because he said, the question of competency is different from what it takes to determine diminished capacity in order to commit a crime. And then he looked at, or had before him, or we have, in any event, the checklist that your doctor went through for the competency. And I have questions, I have to confess, as to how some of those might have been comparable to responses that would have been elicited to allow the doctor to somehow formulate an admissible opinion as to how that would affect his ability to understand the consequences of what he was putting in his e-mail. But, you know, we're getting into a dialogue that's now gone beyond what was presented to Judge Mahan. And actually, I know I'm out of time, but in reference to Your Honor's question as to the paranoid schizophrenia, he was, the trial was continued many times because Eric was found to be incompetent. So I believe that there were previously, not a trial, but previously, findings on the record that Eric was a paranoid schizophrenic. It's probably why I kind of glanced over that issue. However, I agree with you. It probably was important. I probably should have said that. Okay. Thank you very much. He wants you to tell him to go. Oh. Yes, sir. May it please the Court. Peter Levitt for the United States. At trial, when the district court asked the defendant what would Dr. Colosomo say about diminished capacity, two points were elicited. First, excerpts of Record 159, Dr. Colosomo doing a competency evaluation versus a diminished capacity evaluation, quote, wouldn't change anything. The questions he would ask would be precisely the same. But, see, that's, I mean, my problem is that Judge Mahan, I think, misunderstood that statement, and it was repeated later, something similar, which was he would ask the same questions, not that he would do the same analysis once he got the answers. And Judge Mahan was hearing the second, not the first. So I do think he got something, something got lost in the translation here. It's possible that Your Honor is correct, but the second, then there is a serialized difference between dusky competency and twine diminished capacity. But at the end of that, when the judge asked the defendant again point blank, well, what would Dr. Colosomo say? The proffer is this. Dr. Colosomo would, quote, be able to give some sort of testimony based upon diminished capacity. Excerpts of Record 162. What was the answer? Pardon me? What was the answer? That was the proffer. And the district court found that under the Federal rules of evidence, that's not enough. Well, the dilemma that, and that's why wrong seems somewhat on point, the dilemma is for the proffer to avoid being an opinion on the ultimate question of mens rea so that he couldn't come in and say, and perhaps as counsel framed it before us today, would be objectionable because it would essentially be the psychiatrist saying, he couldn't form the mens rea because he's a paranoid schizophrenic. But Ron says, you still have to look at whether what the doctor can testify to would give the jury the element, the limitations, the psychological limitations and problems of the defendant so that it could make an evaluation as to whether he would have understood in this written tirade that someone would treat it seriously. And it's not clear to me whether Colosomo, and as presented in the proffer, that he would have asked the same questions, wouldn't have been able to translate his findings with respect to competency and say the same reason that he couldn't help his counsel is the very reason, because he can't appreciate the consequences of his actions or his statements, would be the same reason that he would have had difficulty understanding that other people might treat him seriously. Now the way one would normally expect the record to unfold is that there would have been a voir dire of the expert and that the expert would come forward and you would have had some discussion about these. And if the district judge then was persuaded that the doctor didn't have an adequate foundation in his questions, because he didn't, you know, he could make that, or that the only thing he would wind up saying would be a legal conclusion, which the rule prohibits, we'd be in a much better place. But my problem is that it got cut off on this rather simplistic, well, they're different outcomes, different legal questions, and that's troublesome. I would agree with virtually everything Your Honor said except the characterization that Christian was in any way cut off. Christian was afforded a full and fair opportunity to present nothing along the lines of Your Honor's eloquent proffer, but a proffer to show how, within the ambit of Rule 702, Dr. Colosimo was going to say anything. But I understood him to say was, he asked a bunch of questions true in the context of competency, but from the answers to those questions, from which you can surmise he had those answers or remembered them. He can now go back and do an analysis of diminished capacity, and he says that he can do that. And the judge kept saying that he seemed to be saying two things. One, as I said, I think he misunderstood this distinction between what questions he asked and what evaluation he'd done. And second of all, he kept saying, but he wasn't asked to do that originally, and I – and that's true, he wasn't. But he's now saying that from the same data he can do it. And so the judge seems to be asking for something more. He seems to be asking for a written report demonstrating that he can do it, or something more than a representation that he can do it. I think I would disagree with Your Honor only in the sense that Dr. Colosimo did not say, I can go back and do it. All he said was, I will, quote, be able to give some sort of testimony based on diminished capacity. Well, what? There's nothing about, if you give me a chance to do it. We would be admittedly in a different situation if the proffer had been, Dr. Colosimo would testify that based on his examination of Christian in July of 2009, Christian has impulse control problems. And he starts out asking authority figures nicely to get his car back, and as soon as he hears the answer he doesn't like, he lashes out. If there had been a proffer a long ago – What would have made – at least made a lot more sense here to get Dr. Colosimo into the courtroom and do a voir dire of him? Pardon me, Your Honor? To do a voir dire of the doctor and say what would you justify to him? I think that added prophylactic measure could have been taken, but based on the meagerness of the proffer, be able to give some sort of testimony based on diminished capacity, it wasn't necessary. Well, that was what Mr. Marchese said in frustration at the end of the whole colloquy. But before that, he said that the two evaluations would not change anything. The questions that he would ask would be precisely the same. It is his expert feeling and opinion that the contact he had with my client was enough that he was able to evaluate him and make a determination. But you're suggesting what the proffer should have said is that based on the competency of the proffer, he would have been able to evaluate him and make a determination based on the capacity of the proffer. Yes. And that's what he didn't say. Well, it seems to me it's exactly what he said, maybe a little unlawfully. Your Honor, I think he would have to say not, I would be unlawfully, but I would be able to give some sort of testimony upon diminished capacity. He would have to say something within the meaning of Rule 702. Some sort of testimony upon diminished capacity does not, I would respectfully submit, assist the trier of fact under Rule 702, understand the workings of the human mind, if, as Judge Fisher pointed out, Dr. Colosimo had made a proffer along the lines of, yes, I did a competency evaluation back in 2009, but I remember this fellow and I remember certain features of his personality and I want to share those with you now, and based on those, his impulse control problems, anger problems, we'd have a different case, but we don't have that case here. We have nothing in this record about paranoid schizophrenia. We have nothing in this record even about what we were talking about, what was raised for the first time on appeal. Was the paranoid schizophrenia not in the incompetency evaluation? Your Honor, there were several. There was the this defendant was made a, was prosecuted in Nevada State Court right about the time in 09 that he made the threats in our case was prosecuted federally. He was evaluated twice psychiatrically in the State system. Yes, but on this doctor's report, did you do a written report? Does that written report not say paranoid schizophrenia? I don't remember, actually. I don't believe Dr. Colosimo ever says anything along those lines. He said he does use the word psychotic, but he says nothing about whether or not anything he's suffering from precludes him from the ability to formulate the specific incentives. I understand that, but you said if he had said paranoid schizophrenic, that would have been perhaps sufficient, and I'm asking you, did he say that? Your Honor, I do not believe Dr. Colosimo ever said anything along those lines in his report. It only lasted an hour, and the defendant was largely uncooperative. Okay. Thank you. Thank you. Thank you very much. We'll give you one minute in rebuttal. Just basically, just briefly, in reference to what the government's saying in reference to the record, I would go back and say that there was a record previously made, because Mr. Christian was found incompetent previously by the court, and those showings show that he was diagnosed as a paranoid schizophrenic. It might not have been set on the record during the trial. However, there were findings in the record based upon the prior evidence-involving evaluations. Dr. Colosimo's report actually says psychosis, not otherwise specified, probable delusional paranoid type. That's what it says. Yes. And, I mean, I'm not an expert in this field of mental afflictions. However, I would take that as you could certainly classify Mr. Christian as paranoid schizophrenic. Thank you. Thank you. The case of United States v. Christian is submitted, and we will go to the last case of the day, Hooks v. International Longshore and the Warehouse Union.
judges: Alarcon, Fisher, Berzon